**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Boise Cascade Corp.,

Plaintiff,

v.

Paper, Allied-Industrial,
Chemical and Energy Workers
(PACE), Local 7-0159,

Defendant.

Civil No. 00-2344 RHK/RLE
**MEMORANDUM OPINION AND ORDER**

---

Marko J. Mrkonich and Thomas R. Revnew, Littler Mendelson, Minneapolis, Minnesota, for Plaintiff.

Joan G. Hill, PACE International Union, AFL-CIO, CLC, Nashville, Tennessee, and Paul W. Iverson, Williams & Iverson, Roseville, Minnesota for Defendant.

---

**Introduction**

This matter comes before the Court on the parties' cross-motions for summary judgment. Plaintiff Boise Cascade Corporation ("Boise") filed an Application to Vacate Arbitration Award seeking vacation of the award that directed Boise to reinstate one of its employees with back pay and seniority. Defendant Paper Allied-Industrial Chemical and Energy Workers, Local 7-0159 (the "Union"), filed a counterclaim to Boise's application, seeking to enforce the award.



FILED APR 06 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD APR 06 2001
DEPUTY CLERK

## Background[1]

Boise owns and operates a pulp and paper mill in International Falls, Minnesota. The Union represents a group of Boise's employees, including Nancy Burmeister ("Burmeister"), the employee whose conduct is at issue here. Boise and the Union are parties to a collective bargaining agreement, covering the terms and conditions of employment for production and maintenance employees, such as Burmeister.

Burmeister had been working for Boise for approximately eleven years as a Process Operator in the Mill Department when she was terminated. Burmeister's employment problems began in 1997 when, due to her failure to report to work for her scheduled shift and missing forty-five days in a one-year period, on January, 30, 1997, she was placed on a Last Chance Agreement ("LCA"). The 1997 LCA provided that Burmeister must avail herself of the Employee Assistance Program counseling, and must not have any further attendance issue for the six months following the issuance of the LCA. Burmeister satisfied the conditions of her 1997 LCA and her employment was without incident until May 2, 1998, when she reported to work intoxicated. When asked by her supervisor, Jim Larson ("Larson"), if she had been drinking, Burmeister responded that she had only had a couple of beers. Larson escorted Burmeister to the health services

---

[1] The parties do not dispute the following facts. (See Def.'s Mem. of Law in Supp. of Def.'s Mot. for Summ. J. at 1; Pl.'s Mem. of Law in Supp. of its Mot. for Summ. J. Seeking to Vacate Arbitration Award at 3.)

for testing, and then drove Burmeister home. Burmeister's test showed a blood alcohol count of .28 (well above the legal limit for driving a vehicle).

Burmeister's intoxication would have justified her termination under the collective bargaining agreement as a violation of the Boise's drug and alcohol policy. Instead, Boise and Burmeister entered into another LCA requiring Burmeister to seek treatment through the Employee Assistance Program, to submit to two years of random drug and alcohol testing, and to comply with all published policies and procedures. The LCA advised Burmeister that "[f]urther violation of any mill rules and/or failure to comply with the Terms and Conditions of this letter could result in your immediate termination." Burmeister signed the LCA acknowledging that she understood the agreement and accepting it in lieu of termination. Burmeister was also suspended for three days.

On October 22, 1999, Burmeister failed to show up for work and failed to call in advance of her scheduled shift to notify her supervisors of her absence. When she called in later that day and requested immediate vacation, it was granted. Upon returning to work, Burmeister was informed by her supervisor, Wayne Sullivan ("Sullivan"), that her absence on October 22 constituted a violation of her LCA. Boise did not terminate Burmeister at this time, but warned her that no further attendance violations would be tolerated. Burmeister acknowledged that she could have been terminated on this date, and that she was granted leniency for her violation.

Less than four months later, on Friday, February 11, 2000, Burmeister again failed to report for her scheduled shift, and failed to call her supervisor to inform him she would not be in that day. Two and one-half hours after Burmeister's scheduled shift had begun, Sullivan received a call from Larry Matthews, an Employee Assistance Program counselor, informing him that Burmeister had sought counseling for her alcohol problem, and would be entering an in-patient treatment program on Sunday, February 13, 2000.

On February 14, 2000, Boise met with the Union to discuss Burmeister's absence. Boise and the Union agreed that (1) Burmeister had not reported for her scheduled shift on February 11th; (2) her use of alcohol prevented her from going to work that day; (3) she was not in an in-patient program on the 11th; and (4) she understood that she could not have any more absentee problems during her employment with Boise. The Union argued that Burmeister should not be discharged because she had entered an in-patient treatment program, and was attempting to rehabilitate herself. The Union's argument notwithstanding, Burmeister was discharged for her failure to report for her scheduled shift.

On February 15, 2000, the Union grieved on Burmeister's termination. The stated ground for the grievance was: "[t]he Union feels that because [Burmeister] is at this time taking part in an in patient treatment facility, that she should not be terminated." The grievance was denied, the Union appealed, and the matter went to binding arbitration as required by the collective bargaining agreement. The arbitrator determined that Burmeister could only be terminated for violating a <u>published</u> policy or procedure, and

Boise's policy on absenteeism was not published. Accordingly, the arbitrator held that Boise could not terminate Burmeister for failing to report for her scheduled shift, and directed her reinstatement with back pay and seniority. This action followed.

Currently before the Court are the parties' cross-motions for summary judgment. For the following reasons, the Court will grant Boise's Motion for Summary Judgment Seeking to Vacate the Arbitrator's Award, and deny the Union's Motion for Summary Judgment.

## Analysis

### I. Standard of Decision

The Court's authority for vacating an arbitration award derives from 9 U.S.C.A. § 10(d). This statute provides, in pertinent part, that:

> the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration ... [w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C.A. § 10(d). The standard of review is extremely deferential. The role of the reviewing court is limited to determining whether the arbitrator's decision "draws its essence" from the parties' agreement. United Steelworkers v. Enter. Wheel & Car Corp., 80 S. Ct. 1358, 1361 (1960); Franklin Elec. Co. v. Int'l Union, UAW, 886 F.2d 188, 192 (8th Cir. 1989). Thus courts are not authorized to reconsider the merits of an arbitration award. United Paperworkers Int'l Union v. Misco, Inc., 108 S. Ct. 364, 370 (1987).

This deferential standard of review does not, however, amount to a grant of unlimited power to the arbitrator; the arbitrator is not free to dispense his or her own brand of industrial justice. Enter. Wheel & Car, 80 S. Ct. at 1361. Where the arbitrator bases a decision on some body of thought, or feeling, or policy, or law that is outside the contract, the reviewing court must vacate or modify that decision. St. Louis Theatrical Co. v. St. Louis Theatrical Bhd Local 6, 715 F.2d 405, 407 (8th Cir. 1983). The narrow issue before the Court is whether the arbitrator's order to reinstate Burmeister drew its essence from the LCA.[2]

## II. Arbitrator's Decision

The arbitrator framed the issue before him as: "Did the Grievant, Nancy Burmeister, violate her Last Chance Agreement?" The arbitrator made the following findings:

I. Burmeister understood that she had to comply with all published mill rules and policies and that any violation of any published mill rule or policy could result in the termination of her employment.

II. There is no published mill rule or policy pertaining to when an employee must call in to be absent before her shift starts.

---

[2] The arbitrator correctly held that the LCA superseded the terms and conditions of the collective bargaining agreement. Coca-Cola Bottling Co. v. Teamsters Local No. 688, 959 F.2d 1438, 1440 (8th Cir. 1992) (holding that the "just cause" standard in the collective bargaining agreement did not apply because the last chance agreement superseded the parties' collective bargaining agreement); see also Ohio Edison Co. v. Ohio Edison Joint Council, 947 F.2d 786, 787 (6th Cir. 1991) (holding that generally last chance agreements are binding in arbitration).

> III. Burmeister admitted that she knew she was expected to report to work as scheduled and if she could not report to work, she was expected to contact her supervisor . . . before her shift was scheduled to begin.
>
> IV. Burmeister knew her actions in not calling in on October 22, 1999, could have been grounds for her termination.

(See Compl. to Vacate Arbitration Award, Ex. D (Arbitrator's Decision).) Based on these findings, the arbitrator held that Boise could not terminate Burmeister for failing to report to work without calling in because the call-in rule was not a published mill rule, and Burmeister could only be held accountable, under the terms of the LCA, for complying with published policies and procedures. The arbitrator explained that although this result may be unfair to the employer, he was required to strictly interpret the language of the LCA.

Prior to awarding Burmeister her remedy under the collective bargaining agreement, the arbitrator noted that Burmeister's failure to call in on February 11, 2000, cannot be construed as being "frivolous," and that "it is clear that [Burmeister] needed immediate assistance through the Employee Assistance Program on that day to get herself into an in-patient alcohol treatment program as soon as possible since this disease was controlling both her personal and working relationships." (Id.) The arbitrator, having found that Burmeister had been unjustly discharged under the terms of the LCA, awarded her back pay and reinstatement with seniority.

## III. Review of Arbitrator's Decision

The Court agrees with the arbitrator's determination that if Burmeister violated the LCA, and that Boise's enforcement of the LCA cannot be disturbed. Contrary to the arbitrator's finding, however, the Court concludes that Burmeister did violate the LCA when she failed to show up for work on February 11, and failed to call her supervisor before her shift began. Burmeister conceded at the hearing before the arbitrator that she knew there was a rule at the mill, albeit unwritten, that required her to be at work when scheduled or that she contact her supervisor two hours before her shift began, and that her violation of this unwritten rule could result in her termination. The arbitrator construed the unambiguous language of the LCA as covering only violations of published mill rules.

The Court concludes that the arbitrator's decision did not draw its essence from the parties' agreement because (1) the plain language of the LCA does not support the arbitrator's decision, (2) the arbitrator failed to discuss the operative terms of the LCA, and (3) the arbitrator ignored the parties' intent when they entered into the LCA.

### *A. Plain Language of the LCA*

The language of the LCA upon this issue is unambiguous; it clearly states that Burmeister could be terminated for violating "any mill rule." The Union contends that the second sentence containing this language actually modifies the first sentence, which requires Burmeister to follow all published policies and procedures. The Union further argues that the arbitrator's interpretation of these sentences cannot be interfered with unless the contract is not susceptible to his interpretation.

The language of the LCA is not ambiguous and not susceptible to the arbitrator's interpretation. Without an ambiguity, the arbitrator did not have the authority to alter the LCA by interpreting unambiguous language in a way contrary to its plain meaning. Northwest Airlines v. Int'l Ass'n of Machinists Workers, Air Transp. Dist. Lodge # 143, 894 F.2d 998, 1000 (8th Cir. 1990). The language at issue states: "In addition, you [Burmeister] must understand that it is your responsibility and obligation to follow all published policies and procedures. Further violation of any mill rules and/or failure to comply with the Terms and Conditions of this letter could result in your immediate termination."[3] (Compl. to Vacate Arbitration Award, Ex. C (May 1998, Last Chance Agreement) (emphasis added).)

The Union's argument that the second sentence modifies the first sentence is unpersuasive. The first sentence sets forth Burmeister's obligations under the LCA, i.e., to follow all published policy and procedures. The second sentence, however, provides for her termination if she fails to follow her obligations under the LCA or violates any mill rule. If the language of the agreement is clear and unambiguous, and the parties agreed to it, then they are bound by it, and neither the arbitrator nor the Court may alter it. Tootsie Roll Indus. Inc. v. Local Union No. 1, Bakery, Confectionary and Tobacco

---

[3] The arbitrator found that the Boise agreed in the LCA to "terminating [Burmeister] for only violations of published rule [sic] and procedures." (Compl. to Vacate Arbitration Award, Ex. D (Arbitrator's Award) (emphasis added).)

Workers' Int'l Union, 832 F.2d 81, 84 (7th Cir. 1987). The Court concludes that the language of the LCA is not susceptible to the arbitrator's interpretation.

Showing that the contract is not susceptible to arbitrator's interpretation, however, is not sufficient by itself to vacate an arbitration award. George A. Hormel & Co. v. United Food & Commercial Workers, Local 9, 879 F.2d 347, 351 (8th Cir. 1989).

### *B. Failure to Address Operative Terms of LCA*

The arbitrator also neglected to discuss the operative terms in the LCA. Instead, the arbitrator paraphrased the language and by doing so substantially changed its meaning. The operative language in the LCA, as quoted above, was not discussed by the arbitrator, and "where an arbitrator fails to discuss a probative contract term and at the same time offers no clear basis for how he construed the contract to reach his decision without such consideration, there arises a strong possibility that the award was not based on the contract." Hormel, 879 F.2d at 351. The arbitrator concluded, without quoting or discussing the operative language, that Burmeister could only be terminated if she failed to follow a published mill rule.

In Hormel, the Eighth Circuit cautioned that an arbitrator's decision cannot be vacated solely because the court believes that the language of the agreement is plain and unambiguous, and not susceptible to the interpretation given by the arbitrator. Id. On the other hand, the court held that an arbitrator's decision must be vacated that is "so contrary to common experience and logic that it is more likely than not that such result was not the intent of the parties, and where *additional* facts exist that strongly indicate that the

arbitrator did not premise his award on the contract, notwithstanding his words to the contrary." Id. (citations omitted).

The arbitrator purports to be strictly interpreting the LCA, but neglects quote the LCA or discuss the implication of the phrase "any mill rule." Moreover, the arbitrator's discussion of Burmeister's reason for her absence on February 11, and his determination that it was caused by a non-frivolous reason, raises the concern that the arbitrator was not interpreting the LCA but dispensing his "own brand of industrial justice." Notwithstanding the words of the arbitrator, it was unreasonable for the arbitrator to state the he is strictly construing a contract in determining whether Burmeister could be terminated, and at the same time, ignoring the language of the contract addressing the grounds for her termination.

Had the arbitrator discussed the operative language in the LCA, and provided any rationale of how he interpreted "any mill rule" to mean "any published mill rule," this Court might reach a different conclusion. See United Paperworkers Int'l Union v. Misco, 108 S. Ct. 364, 371 (1987). However, because the arbitrator ignored the operative language of the LCA, and did not provide any reason for his failure to mention the language, the award must be vacated "because such shortcomings are an indication that the arbitrator has not interpreted the specific contract at issue." Hormel, 879 F.2d at 351 (citing Trailways Lines v. Trailways, Inc. Joint Council, 807 F.2d 1416, 1423-25 (8th Cir. 1986)).

### C. *Parties' Intent*

The parties' intent when entering into the LCA is not controverted, and does not support the arbitrator's decision. "In construing any contract, including a collective bargaining agreement, determining the intent of the parties is the essential inquiry." CSX Transp., Inc. v. United Transp. Union, 29 F.3d 931, 936 (4th Cri. 1994) (quoting Local 1199, Hospital & Health Care Employees Union, etc. v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992) and Loveless v. Eastern Air Lines, Inc., 681 F.2d 1272, 1279 (11th Cir. 1982)). The arbitrator found that Burmeister knew when she entered into the LCA that if she failed to show up for a scheduled shift she could be discharged. In fact, she testified before the arbitrator that she could have been discharged when she failed to report for her shift in October but was given a second chance by Boise.[4] The arbitrator also found that, during the February 14, 2000, meeting, the Union did not dispute that Burmeister could have been discharged when she failed to show up for her scheduled shift in October. Therefore, considering only the arbitrator's findings, it is evident that all parties agreed that Burmeister could have been discharged for failing to show up for a scheduled shift under the LCA. It would further create an absurd result if an action that could have provided the grounds for terminating Burmeister prior to her showing up for work intoxicated and being placed on the LCA, would be removed while she was subject to a last chance agreement. Accordingly, the Court determines that the evidence before the

---

[4] In 1997, Burmeister was placed on an LCA for the same reason that she was terminated–absenteeism. (Compl. to Vacate Arbitration Award, Ex. B (1997 LCA).)

arbitrator compels the conclusion that the parties intended to include any mill rule as the basis for terminating Burmeister when they entered into the LCA. Any mill rule included the unwritten absenteeism rule.

**Conclusion**

Based on all the files, records and proceedings herein, and the arguments and memoranda of the parties, **IT IS ORDERED** that

(1) Boise's Motion for Summary Judgment Seeking to Vacate Arbitration Award (Doc. No. 15) is **GRANTED**;

(2) Defendant's Motion for Summary Judgment (Doc. No. 19) is **DENIED**;

(3) Defendant's Counterclaim (Doc. No. 13) is **DISMISSED WITH PREJUDICE**; and

(4) the arbitrator's award reinstating Burmeister with back pay and seniority is **VACATED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 6, 2001

RICHARD H. KYLE
United States District Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: APR 0 6 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*